May it please the Court, Scott Stewart for Appellant Raymond Foss. If I may, Judge Reinhardt, I'd like to try to save two minutes for a rebuttal. Certainly. Try to watch out for it. Nobody's done too well. Will do. Thank you, Your Honor. But we've been generous. May it please the Court, a quarter century ago, this Court held in Draper v. Coombs that an alleged failure to comply with extradition law can state a claim under Section 1983. In this case, Plaintiff Raymond Foss simply asked the District Court to apply the principles set forth in Draper v. Coombs. Could you help me in this case by going through who the remaining defendants are? Because I want to try to assess them individually. Yes, Your Honor. You've dropped the claim against the judge. We did, Your Honor. You have a claim against the officer in California who initiated the arrest. Yes, Officer Rowan, Your Honor. And you have a claim against the officer in South Carolina who effectuated the arrest. Lieutenant Robinson, yes, Your Honor. I'm sorry. I guess I should say the officer who procured the arrest warrant. Right. Yeah. And I used effectuated in sort of a broad term. You have a claim against the U.S. Marshals who transported your client. You've asserted a claim against the U.S. Marshals who transported your client from South Carolina to California. Yes, Your Honor. Is there anybody else remaining as a defendant in this case? The remaining defendants are the York County, South Carolina Sheriff's deputies who transferred Mr. Foss to the U.S. Marshals, Your Honor. Okay. Can I – let's assume for purposes of discussion that the judge improperly got your client to consent to extradition. Yes, Your Honor. But there nonetheless was a signed waiver of extradition. Aren't – isn't everybody down the line from there entitled to rely on that? The U.S. Marshals have to say, I've got this piece of paper here, but I'd better go back and find out if the judge screwed up. Your Honor, there's nothing in the record indicating that any of the other – any of these defendants saw the waiver in this case, particularly with respect to Officers Rowan and Lieutenant Robinson. But there was one. There was one. There was one waiver that appeared valid on its face. It may not have been valid, that waived all of these rights. And so my question is, do the people down the line have to make inquiry? They don't need an extradition order under these circumstances in general because there's a waiver. Do they have to make inquiry about how valid the waiver is? I have some difficulty figuring out how the people in York County who held him and transferred him, knowing that there was a waiver, or there was a waiver, whether it was a waiver that was public record, and the Marshals did anything wrong here. So could you address the people post-waiver for me? Okay, so addressing the folks after Officer Rowan and after Lieutenant Robinson. Yeah, I want to get back to the first two, but I'm having great difficulty figuring out, even under your theory of the case, how once there was a piece of paper signed by your client which says, I waive all my extradition rights, anybody who later transported him or detained him did anything wrong? With respect to the United States Marshals, Your Honor, I don't believe there's any indication that they knew at the time that ‑‑ Okay, well, assume that they didn't see it. Is there ‑‑ but it existed. What did they do wrong? Under the extradition laws, Your Honor, an extradition must be effectuated by the agent appointed by the demanding State. They must go and pick up the person who was going to be extradited. Is there a private cause of action for failure to ‑‑ I mean, I know these people were deputized after the fact. Yes, Your Honor. But is there a private cause of action, or is that just simply part of the extradition laws to protect the sending State from the burden of transporting the person to the receiving State? In other words, I'm having a hard time seeing why the identity of the transporting people violates your client's civil rights. This is a 1983 case. Right, Your Honor. In Draper, the court discussed the proposition held that the violations of these procedures, to the extent they're guaranteed by the Constitution and Federal laws effectuating that guarantee, do state a claim under Section 1983. Well, so your position is that any violation of ‑‑ any violation of the extradition laws, this is certainly not a violation of the Constitution, any violation of the extradition laws, so if the U.S. Marshal doesn't have that piece of paper that deputizes him, he is liable even though ‑‑ even though the person has waived extradition? That's your position, isn't it? If the person has validly waived extradition? Well, the problem is, of course, now you can't say to the U.S. Marshal when you're transporting somebody, you're doing it at your own risk because later on down the road the defendant may prove that his waiver was no good. So I take it your position has to be that there's strict liability here for the U.S. Marshals. Your Honor, I don't think that's the case here because the United States Marshals, if their obligation is, as it is under the Federal extradition law, to be an agent appointed to receive the person who is being extradited, they have some basic obligation to make sure that they have actually received that appointment, that they've received that authority from the executive authority of their ‑‑ But if there's a waiver, they don't need to have that authority, am I right? If the waiver were valid, as with other constitutional rights, that could be waived. So your position is that if there is a waiver, but it turns out later to be invalid, everybody who acted after the waiver was signed is liable to the defendant under 1983? I don't ‑‑ it's not quite that position, Your Honor. It's if there was ‑‑ if there were evidence that there was reasonable reliance on the waiver, that would militate against finding ‑‑  I understand your position. And I hope Judge Reinhart will give you some extra time because I find this case fascinating. I want to ask you some more questions. What's it like? I want to ask you some more questions. What did the guy in California do wrong? He did a few things wrong, Your Honor. The key thing that he did was that he purported to ‑‑ he's only a municipal officer, yet he purported to make a demand on behalf of the State of California for the extradition. So your position is that a police officer, somebody gets a ‑‑ a warrant is issued in California, a police officer who's been on the case, does some investigation, determines that the subject of the warrant, and it's pretty serious charges, the client got a lot of time for him, determines that the person is now in South Carolina. Your position is that he violates that person's civil rights by calling somebody, the police officer in South Carolina and saying, we believe this guy is there, we've got the arrest warrant, we put it into NCIC, here's his information, please arrest him. I think there's no dispute that that's what the officer in California said to the officer in South Carolina. He may have said more. But assuming that's all he said, how did he violate your client's civil rights? I'd amend the characterization of the factual allegations here just slightly, Judge Hurwitz.  Well, let's say it's the same in the State of California. Fair enough. Make it a full‑fledged amendment. I demand you arrest this person who's been ‑‑ who everybody agrees is the subject of a California arrest warrant, of California charges at the time. Yes. What's wrong with that? It fails to follow the constitutional demand requirement that a demand be made by the demanding State. On page 120 of this Court's opinion in Draper v. Coombs, the Court made quite clear that ‑‑ Well, the person can't be handed over until there's a demand by the requesting State. That's what the expedition laws require. Right, Your Honor. But can he be detained pending that request? In some circumstances, that could be the case. But here the problem was that Officer Owen purported to make a demand. And that was evident both on the allegations and on the face of the waiver form itself, which before California had done anything, the waiver form itself at page 120 and 133 of the excerpts of record say that the State of California had demanded Raymond Foss here, even though on the allegations the State hadn't done any such thing, only Officer Owen, a municipal officer, had acted. So if he wouldn't have violated your client's rights, had he merely called the South Carolina people and said, I can't demand that you arrest him, but I got an arrest warrant here for a very serious crime, and my police department would really like you to arrest him. That would be okay. That would be permissible if he didn't purport to make a full-scale extradition demand at that time. I'm just trying to think. So your problem with Officer is that? Rowan. Rowan. In California is that he used the word demand rather than. He purported to say this is a State of California-backed extradition request. The State is seeking to extradite this prisoner. Because when you get the State behind something, Your Honor, it obviously has more force, more weight than just a municipal officer's kind of phone call say-so saying, you know, I'm a municipal officer. I want, you know, please arrest this guy kind of a thing. With respect to the officer in South Carolina, your problem, I take it, is that you say he misrepresented whether or not he'd actually seen the arrest warrant. That was one of them, Your Honor. And it goes more to the Fourth Amendment claim. It also does overlap with the substantiation requirement for the extradition claim. Well, here's my problem. There's no doubt in this case that the arrest warrant existed, and there's no doubt that it was in the database at the time. If instead of saying what – and I'm not sure his affidavit in support of the arrest warrant in South Carolina really misstates anything, but let's assume that it does. Wouldn't the warrant have issued anyway? Oh, the fugitive warrant, Your Honor? Yes. I don't think it would have because it seems that Lieutenant Robinson didn't really think it would have because he did add that critical sentence. Well, but I don't care what he thinks. I guess I was just asking as a matter of law. If California – if in fact – let's assume that the demand or request from the officer in California was appropriate and that what he transmitted was true. Nobody disputes that it was true. There was an arrest warrant. It was on some serious charges in California. Wouldn't – and let's also assume that the affidavit that the officer in South Carolina made was misleading in the sense that he hadn't seen the physical arrest warrant yet. But we all know they existed. How would – can you make any argument that the judge – that the fugitive warrant in South Carolina wouldn't have issued anyway? Yes, we can, Your Honor. I think that one of the key points there is that we're not sure that the arrest warrant existed on that time because the claim that Lieutenant Robinson made was that he had received these documents, transmitted them to a warrant. Well, we're not sure Lieutenant Robinson had seen them, but we are sure that – we know an arrest warrant had issued them. We have a copy of it. It's in the record. We do, after the fact, Your Honor. But he hadn't seen it at the time. And the probable cause of termination is based on – was based here on the affidavit. And it's – the probable cause is measured by what the swearing officer knows and what his knowledge is. Yeah. Well, this is what the swearing officer says to the South Carolina magistrate. I got a phone call. They told me this guy is wanted on an arrest warrant. They gave me the arrest warrant number. It's in NCIC. He said he's sending it to me, but it hasn't arrived yet. Would the officer – wouldn't the arrest warrant – fugitive warrant still have issued? I don't think so, Your Honor. I think the problem there is is that we don't – it's important to know whether this is a felony, punishable by over a year, that there is a certain – You don't know that he's actually charged with that at this time, Your Honor, because he hadn't seen documents making sure. No, no. We're passing each other tonight here, so I want to be fair to you. I'll take your – I'll take for a moment as true your suggestion that nobody really knew what this provided for at the time the arrest warrant was issued. But we do know that the arrest warrant was issued in California, that the crimes charged were those punishable by more than a year, that had all that information been appropriately transmitted to the magistrate in South Carolina, warrant was issued. And so my question is what prejudice did your client suffer from any alleged misrepresentations that the officer in South Carolina made? Well, I think the prejudice – I think there are two answers. One is, Your Honor, I think that your questions are going mostly to damages rather than the liability. The elements of the claims are there. The violations are there. The question may be is Mr. Foss entitled to actual damages or compensatory damages.       And the second is that there are no damages, but there are at least nominal damages. Right. At the very least nominal damages. That's consistent, and that's what Draper v. – and I apologize for going over my time, Judge Reinhart. All right. We'll penalize Judge Herwig. It's at my behest. I'm going to get 3 minutes less for lunch. It goes to the amount of damages, Your Honor. On page 921 to 922 of Draper v. Coombs, that's something that the presiding judge, Your Honor, touched on about, you know, maybe if there are no actual damages, at the very least, because of the procedural violation of a constitutional right, there are at least nominal damages. So at the very least, I think that goes not to liability, Judge Hurwitz, but to the amount of damages that may eventually be available on remand. Thank you. Thank you, Your Honor. Good morning. May it please the Court. Peter Smith. I'm a deputy attorney general with the State of California representing the defendants. Which defendants do you represent? U.S. Marshals Service, and I assume Lieutenant Robinson as well as York County. What happened with this case, Your Honor, if I can speak to how I got it. I'm a prosecutor by trade, and I don't do 1983 cases. But I do have experience in extradition, and it came to our office with, I can't remember whether it was a letter from this court or from someone saying it. Whatever it was, it was duly authorized, I assume. Yeah, I guess. So here I am, the criminal prosecutor arguing a 1983 case. But just to address some questions you had and some responses made by counsel, U.S. Marshals Service commonly in extradition will get a call from a county saying, hey, this fugitive has waived or there's been a governor's warrant that's been issued in the asylum state. Can we make arrangements to transfer this gentleman? In this case, there was a waiver. And the waiver waived any allegations, whether they're true or not, by counsel. And I don't believe the U.S. Marshals Service has a duty to look behind that waiver to determine whether or not it's consensual. They have to. I take it where counsel ended up in our colloquy was saying, that's fine if they knew about the waiver. But there's no evidence. But we're at an early stage of this case, and I'm entitled to prove that they didn't know about the waiver and therefore get damages against them. Well, I don't know if you can – first of all, I don't know if you can assume that fact, that they did not know a waiver did not exist or they had no idea a waiver Well, you can assume any fact that's in the complaint because nobody answered the complaint. But I'm not sure that's in the record. I could be wrong. Is it a plausible allegation that the U.S. Marshals just would have shown up to take somebody without being told that there is either a warrant or a waiver? I'm in trouble with that. No, I think commonly the call is A lot of things aren't very plausible. We just had a case last week where the FBI went into the federal judge and lied three times in a row about concealing hundreds of documents. And we found a way to let them out of that by saying it wasn't within the Rule 11 time, so the sanctions would be dismissed, even though the information was falsely, wrongfully concealed throughout the Rule 11 period, so the plaintiffs could never have found out. But the fact is plausible, implausible as it may seem to us, the FBI lied hundreds of times to the federal judge. So is it plausible that a marshal would have executed papers without having the right authority? Well, I want you to get back to what I was asking. Let's assume that the paper he doesn't know about the papers and they're no good. Is there a cause of action against him? Their duty is to transport. And so they get a call, transport this fugitive. So you're asking them to check I guess, I guess the validity of the papers. The validity of the papers. And you're assuming that they don't ask about the validity of the papers, which I think, and I, excuse me, but I think that's a large assumption to make. I don't even know, because I didn't pay enough attention, to what is in the complaint. They may not have alleged in the complaint. I mean, that's a prisoner. I don't remember it, but I'm sure counsel will correct me if I'm wrong, that the U.S. Marshal Service did not know of the waiver. But you're asking. As I read the complaint, it simply alleges that they violated his civil rights because the waiver was invalid and because they were not deputized in advance by the State of California. But whether the waiver was valid or not, I think they had, they acted in good faith and was reasonably relied upon that waiver to transport the fugitive. And I wanted to ask you a question. If the waiver, let's assume the waiver was valid, at least facially valid, was Mr. Foss still entitled to be transported by somebody who had the authorization or was it, did he also waive that right? Oh, I think he waived that right. There's specific language in the waiver, Your Honor. Because he waives all of his rights under the. All those rights. So at that point, I guess the dispute between you and the other side is whether it's necessary for the U.S. Marshal to have actually seen the piece of paper. Correct. And, okay, I'm sorry to distract you. Oh, no problem. Let's go back to, I'm really interested in, because they're all R's, I get the names confused, but I want to say the California officer. Rowan. Rowan. Can you address that issue? Sure. Extradition in California and throughout the country is divided into two processes. You have the fugitive arrest process. In California, we call it the 1551 process. That's referring to California Penal Code Section 1551. And that allows an asylum state jurisdiction, whether it's a sheriff's department, police department, to arrest a fugitive with or without a warrant. In this case, it was with a warrant because there was probable cause established through that telephone call between Officer Rowan and Lieutenant Robinson. I take it that the other side doesn't dispute that's okay, but says where Officer Rowan stepped over the line is that he made a demand rather than a request. One, I disagree with that. Officers do this every day. They call, hey, a fugitive is in your county in South Carolina or whatever state you want to pick. There's an arrest warrant for this person, and we're going to extradite them, which is another way of saying we're going to demand that. Demand that the governor issue an arrest warrant. Right. And if you think about it, Your Honor, the demand for extradition through the governor's office, in this case in California or any demand, starts with an application for requisition from the jurisdiction where the charges are paid. No, and I understand that. I don't think – I didn't hear your opponent making the argument today that the extradition warrant had to exist in advance for your – for his client to – he made it before, but I don't hear him making it today. My question is precisely directed to his answer before. Is there a violation of civil rights if the officer in California doesn't simply say, we have this arrest warrant. We haven't – we're going to submit a request for extradition to the governor. He hasn't obviously considered it yet. Is there a difference if he says we respectfully request that you arrest him or that we demand that you arrest him? No, I don't think so. I think, one, we're not sure if the officer said demand, but two – Right, but we're at that stage where they're just making allegations. But certainly they – the demand or the process is generated from that arresting agency or the jurisdiction in the demanding state where the charges are pending. And I don't think there is any prejudice to the – to the fugitive. If – assuming Officer Rowan said California is demanding his extradition, which I seriously doubt he said, but – Well, I just want to ask you a procedural question in this case because – Sure. And I understand Mr. Foss was pro se for much of the proceedings below. But as I understand it, he files the 1983 complaint.  No. No motion to dismiss. There was no – there was nobody representing him. Go ahead, I'm sorry. Okay. There was nobody representing him. I'm trying to figure out why – we have some evidence in this case. We have warrants and affidavits and other things. Sure. Was there a – was it disposed of by summary judgment? Describe for me – in reading the record, I'm not certain I can figure out. I know it was dismissed with prejudice. This district court – what the district court did in – when I'm saying there was no counsel of record, I wasn't on the case at the time, nor was co-counsel. But what the district court did was it allowed – in the initial order, there was an order denying some of the allegations with leave to amend and some without leave to amend. And then there was an order – Was this done under PLRA screening? I mean, I'm trying to figure out – Yes. Okay. Okay. So – and then there was also an order to show cause with respect to the extradition rights allegations, which – and in addition, in that initial order, Mr. Foss was given leave to amend the original complaint. Which he declined to do. Which he – which he declined to do, which ultimately terminated the case and found us here in the – in your case. And then he later filed a motion for reconsideration. He filed a motion for reconsideration. At the same time, he filed a motion to extend his time to amend the complaint. And then when the – after the motion was denied, he filed another extension for time to amend his complaint. I guess this is a roundabout way of me asking this question. Were all the factual materials that Mr. Foss now relies on, the copy of the arrest warrant, for example, and whatever – whatever the officer in South Carolina put in his incident report, was all that before the judge properly when he granted the – when he dismissed this case? Yes. Okay. It was not clear to me how it got before the judge. It was all in motions for reconsideration, was it? No, it was – Some of it was in response to the order to show cause. I think it was a complaint. Okay. And he also filed a – as you mentioned, motion for reconsideration. He also filed a notice of – there was one other pleading that I'm not familiar with just because of my ignorance in this area of the law. Yes, Bob. I guess my point is we're not simply dealing here with – I'm trying to figure out. We're not simply dealing with facial allegations of a complaint. We're dealing with multiple – An expanded record of something. Multiple pleadings. You've spoken about two of the people you said you represent, and I know there's somebody over there who represents somebody else. Tell me – that's the last person you represent, people you represent. Who is that? Lieutenant Robinson. Lieutenant Robinson. Let's assume that he lied, jumped the gun. He's – you know, he knew he was going to get the warrant via fax, but he hadn't gotten it yet. And so his – he misrepresented to the magistrate. And I know you can argue that he didn't, but we're at a stage here where we need to give credence to the allegations. Why shouldn't he be kept in the case, at least preliminarily, if he did that? Well, if he lied about receiving the fax, he still represented in the affidavit some things in which the court could have found probable cause. Well, why doesn't that go, as your opponent says, merely to the damages that he received, as opposed to whether or not there was a Fourth Amendment violation? I think the issue is whether or not there was a Fourth Amendment violation, whether there was sufficient probable cause to issue that warrant at the time, and whether those alleged falsehoods or misstatements were material or not. Let's assume that I'm a lawyer and I come to – a policeman and I come to Judge Reinhart, who's a trial judge, so we're in a fantasy world here. And I say to him, Mr. X has been indicted for some crime and he's living in New York and he's living here, he's indicted in New York, he's living here, and I would like an arrest warrant for him. I have no reason to believe that statement is true. Judge Reinhart issues an arrest warrant, but it turns out the statement is perfectly true. Has there been a Fourth Amendment violation? That's essentially what they're alleging here. It's not quite. But the problem with that scenario, Your Honor, is it's not our facts, because there is the arrest warrant number in the affidavit. And it's accurate. And it's accurate. But he may have been simply told over the phone that there was an arrest warrant. And you can still, by information from another officer, under I think it's Case v. Kitsap, rely on that information as for probable cause for arrest warrant. I'm not sure I read his affidavit as saying that he had the warrant in hand, but his incident report suggests that he has the warrant in hand. Certainly. In the complaint, Mr. Foss alleges that when I contacted Lieutenant Robinson for that information that he relied on for that affidavit, he said he had no record of the NCI check or NCIC check or the warrant he had received. I take that as saying he didn't have that at that time. Well, see, that's why I asked the question. So I'm not sure I got an answer to the question. His allegation is Lieutenant Robinson, in effect, went to the judge on the basis of insufficient information, which turned out later to be perfectly true. So my question is, if you go to the judge and misrepresent the amount of information you have, but it turns out that information exists, is there a Fourth Amendment violation? One, it's immaterial, I believe. But I misspoke. And I'm going to argue no, there's not a Fourth Amendment violation in this instance because there was actually a warrant for his arrest. Okay. And that's my bottom line. But I misspoke about the factual scenario I just spoke of. Mr. Foss went to Lieutenant Robinson later afterwards and allegedly gained this information that he had no record. I'm not saying he had no record at the time. No, I understand.  Thank you, Your Honor. And I promise I won't keep your co-counsel past his time. If there are no other ---- This is one of those cases where 10 minutes was assigned, and in retrospect, I think I should have asked Judge Reinhart to give more. I just ---- You did, of course. Yeah. There's a lot of interesting issues in this case. A lot of people don't delve too deeply into extradition, Your Honor. Thank you. If there's no other questions, I'll submit it on the briefs. Thank you very much. Good morning, Your Honors. I'm Gary Brickwood for Redding. We were also invited by the Court to appear following this prescreening dismissal by the district court in that nobody had appeared on the other side at that early stage. And to clarify one matter that I think has already been partially clarified, all of those exhibits, Justice Hurwitz, to which you refer, are exhibits to the plaintiff's complaint and I think incorporated into the complaint. I thought there was an argument on the motion for reconsideration if there's something new, and I've got something new to add here. He does. He does argue and ask that the motion for reconsideration be considered an amended complaint or in the nature of an amended complaint. And we don't dispute that, frankly, for our purposes here. So I'm here under the Court's voluntary request on behalf of Redding, which means also Officer Rowan, I suppose. Because the argument against Redding is derivative liability. It is against Rowan. And so in my brief, I keep saying Redding. I guess you could simply replace that with Rowan if it's more clear to do it that way. It appears to me that the issue is did Rowan use wrong words in the way that he spoke to Lieutenant Robinson. And the reason I say it that way is in the initial position of Mr. Foss, in the opening brief, they allege that Rowan called Robinson and said, can you help us locate, apprehend, and extradite Foss. That's in the excerpts of record at 81, paragraph 7. We then responded, as you've seen in our brief. In the reply brief, consistent with counsel's position here today, they say Rowan instead exaggerated his authority and made this official demand. And that's what I take to be the essence of their complaint. So I'd like to respond to that more specific issue if I can. Rowan's statements are words to Robinson, whether they are characterized as demand or they're characterized as a request. And they don't in and of themselves infringe a constitutional right of Mr. Foss. Mr. Foss doesn't have a constitutional right for Rowan to make his statement in a particular way. What makes some significance out of his words is what happens, if anything, as a result of the words. And in this case, what happened was South Carolina issued a fugitive warrant based on the actual existence of the California arrest warrant. So whether Rowan said, I demand, or whether Rowan said, I request, or words to that effect, the response in South Carolina was a fugitive arrest warrant, which was lawful because it was based on the lawful correct actual California warrant, which is an exhibit to the plaintiff's complaint. So there's been no response or action infringing Foss, whether it's called demand or it's called request, other than the arrest on the fugitive warrant. So the question isn't the word used. There's no allegation that the word used or the words, character of the words as demand versus request, prompted some wrongful action by South Carolina. They didn't arrest him more quickly. They didn't put him in a different holding facility. They didn't deprive him of his right to be free from unreasonable searches and seizures in any way based on the word demand rather than request. So, sure. Scalia. Let me ask you this. Certainly the first part, can you help us look, you know, find him, can you do that? All of that seemed to be fine. Did they do anything that under the law they would have done, they would not have done had they known what the true facts were? Are they required to receive something, some documents that they didn't receive before they went out and put him away for extradition? That relates to, I think, the South Carolina people. Yeah. It does. Yeah. And so, in fact, I believe the South Carolina officers could have relied on Rowan's statement that there was an arrest warrant in California and the statement could have included the number of the warrant without actually having the warrant, and I think their actions would have been lawful and based on probable cause that officers can rely on statements of other officers regarding the existence of a warrant or the existence of probable cause to arrest. The South Carolina statute, as I read it, requires an oath or affirmation of an officer having knowledge of the circumstances. So the – If – because you said it doesn't really matter what he said, whether he said – if he gets told and, you know, we've got somebody who ultimately is going to be extradited. You know, he said, I'm a local officer. I know we're going to someday have papers to extradite him. Would you go out and pick him up and hold him for extradition? Would that have made any difference in what the South Carolina officers could have legally done? I don't believe it would have made a difference what the South Carolina officers legally could have done. I think that inherently or common sense, it has to start somewhere, and the typical response, as Mr. Stewart has already stated, would be for officers to make contact with the law enforcement officers in the State where they believe the person is because they want to get him arrested more quickly rather than going executive to executive. Yeah. And the focus in this changed some. When Mr. Foss was first saying, I take it one of his arguments was you can't make that request until there's an actual extradition warrant. That was. And counsel, quite correctly, doesn't pose that argument. So what is it that, with respect to Officer Rowan, what is it that could he have just called up, and this is what Judge Reinhart was asking, but I want to make sure I understand it. Could he have just called up and said, hey, we have an arrest warrant here. It's number X. It's for Mr. So-and-so. He lives in your town. Here's the address. Could you go pick him up and hold him until we get extradition papers put together? Would that be okay? Well. Would that provide probable cause? I know there's more here. I know it's in NCIC. I know the warrant actually exists. I know everything else. I'm asking, if he just called up and said, I've been working on this case. I finally got a judge's issue and arrest warrant. I Googled the guy, and he lives in South Carolina. Go pick him up, and we'll get you all the papers soon. Would that work? Would that be probable cause to arrest him? I would say yes, but I'd like to qualify my answer. You don't have to tell me that the facts are different. I know they are. I'm not going to say the facts are different, but they are different. But what I was going to say was the reason I'm qualifying it is I think that issue turns on a fine point of law under South Carolina law. I don't pretend to be expert on that. Right. No, I'm asking violation of civil rights by the guy. The guy in South Carolina might be obligated to say, I'm sorry. I can't do it until you send me something with a seal and a ribbon on it. But in terms of the request from the guy from California who you represent, would that be okay? I think it would be okay, and I don't think it would impinge constitutional rights. The guy in South Carolina might have said, I need more before I can do that. Yes. So it might make a difference what your client said if what he said wasn't enough to trigger the South Carolina. Well, let's get back to what the facts are here, because it's undisputed that at some point your client sent the arrest warrant. He said the arrest warrant exists. It's in NCIC. It's undisputed that he gave them. It can't be disputed that he gave them the arrest warrant number because it's in the affidavit. Correct. And it's also in the complaint that the arrest warrant was placed in NCIC. Right. Which is a database available to South Carolina. And I think the incorporation of the South Carolina reporting to the complaint means that Mr. Foss, even though he later attempted to amend this allegation, acknowledges that Robinson in South Carolina saw the NCIC report and confirmed the existence of the warrant there, even apart from the issue about the warrant. But I take it that there's no contest in this case that your client sent the documentation. There may be some contest about whether he sent it all before the arrest. Well, there is certainly a contest about whether a later fax copy means the original fax copy wasn't sent. But assume that's true. There's no contest that he sent all the relevant information. There may be a contest that South Carolina acted too quickly before they got it all in. Maybe. But even in that scenario, it's in NCIC. There's no contest about that. That would be sufficient in the case that South Carolina requires the warrant be within the ability of South Carolina to see it and handle it. Thank you. I'd submit the rest of the issues. Thank you, Your Honors. Thank you, counsel. What's the clearest violation that's alleged? The clearest violation, Your Honor, is the improper demand. And I think that maybe the controlling language of this Court's case law that goes most to the heart of the sort of request-demand issue that Judge Reinhardt and Judge Verbergen and Judge Kagan have been discussing, is that the Federal extradition statute, the F.B.C.C.E.C.M.E.S. where, speaking of the Federal extradition statute, the Court said, to provide some protection of the fugitive rights, the statute prohibits a State from extraditing an individual upon the simple request of another State. But that's the extradition. It's not the arrest. But the extradition here is set off by the demand. But you don't contest, do you? Maybe you do. Is it still your position that an extradition warrant must be, must exist before an arrest can occur? From the demanding State, Your Honor? Yes. It need not, if the officer does not purport to make a demand on behalf of the demanding State, if he's just making an officer-to-officer request. But here the whole problem is that he kicked off a full-scale extradition, which led to this waiver purporting, saying that, you know, there was a demand from the State of California. And that's the key problem, is that all this was kicked off by somebody, you know, who, you know, purported to make a demand. And a municipal officer can't just do that. A receiving officer can't just act on the, you know, simple request. He can't make a request. Right. I believe that's right, Your Honor. He can make the request for the arrest. He can make the request for the arrest. He just can't represent that there is, you know, a demand by the State. He has to confirm, as the Court said in Draper, the extraditing State must determine whether the Petitioner has been charged with a felony. He does that by being presented with an indictment or an affidavit certified by the Governor of the demanding State. Those didn't happen here, and I believe those are some of the core violations on the extradition front, Your Honor. And unless there are any other questions, I'm willing to submit the rest on the briefs. Thank you. Thank you. Thank you, Your Honor. Thank you all for your patience with me. The case disargued will be submitted.
judges: Reinhardt, Noonan, Hurwitz